NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-GATE.—April, 1883.

## PLATT v. MOORE.

*In the matter of the judicial settlement of the account of* JAMES S. MOORE *and others, executors of the last will of* HENRY C. HEYL, *deceased.*

Though a specific legacy is considered as separated from the general estate, and appropriated from the time of testator's death, and therefore carries with it any *produce* accruing thereupon, the legatee is not entitled to interest out of the estate, on the value of an unproductive article, by way of recompense for delay in delivery. Nor does a right to such interest arise by reason of an unauthorized reduction of such an article by the executors, into money.

Testator, by his will, gave to P. a legacy described as "two certain policies of insurance amounting to the sum of $20,000 made in my favor by the M. L. life insurance company;" and, in a subsequent clause, directed that the executor convert his personal estate, *not previously specifically devised,* into cash, and that certain legacies, including that of the policies, "be paid and executed as soon after my decease as possible." Some time after receiving letters, the executors, without request of P., demanded and received a check from the insurance company for $20,208, being the face of the policies and $208 "unearned premiums," which check they deposited, at interest, with a trust company. A contest having arisen as to the legatee's rights in the premises,—*Held,*

1. That the legacy was specific, and the executors owed no duty to convert the policies into cash.

2. That the leagtee was entitled to such interest, and such only, as the

amount of the policies had earned during deposit with the trust company.

3. That no sum should be deducted from the legacy for legal services in reducing it to money.

As to whether (1) the legatee was entitled, under the words of bequest, to the "unearned premiums," as forming a part of what the testator intended should pass thereby, and whether (2) a right of action would exist against the executors individually, for retention of the money obtained by the unauthorized conversion of the policies, *quære.*

CONSTRUCTION, on executors' accounting, of a provision in decedent's will, bequeathing a legacy to Julia Platt. The facts appear sufficiently in the opinion.

JOHN D. TOWNSEND, *for Julia Platt.*

JOHN A. FOLEY, *for executors.*

THE SURROGATE.—The will of this decedent was admitted to probate in March, 1882. By its seventh clause, it gives to Mrs. Julia Platt a legacy, which the testator thus describes: "Two certain policies of insurance amounting to the sum of $20,000, made in my favor by the Mutual Life Insurance Co. of New York." Its ninth clause directs that testator's executors shall convert his personal estate, *not previously specifically devised,* into cash, and that certain legacies, including the one now in question, "shall," to use his own words, "be paid and executed as soon after my decease as may be practicable."

About four months after the issue of letters testamentary, the executors, without procurement of Mrs. Platt, demanded and received from the Mutual Life Insurance Co. a check for $20,208, being the full amount of the two policies, together with $208 paid as "unearned premiums." This check was, in August last, deposited by the executors in a trust company, where it has since been

drawing interest. Upon these facts, several questions are presented for decision:

1. Is the bequest to Mrs. Platt to be deemed a "specific legacy"?

2. Is she entitled to receive interest thereon at the legal rate, and, if so entitled, shall such interest be computed from the death of the testator, or from the conversion of the demand of the estate against the insurance company into the company's check, or from the date the check was put to use, or from a year after the grant of letters testamentary?

3. If interest at the statutory rate cannot be allowed, shall the legatee be paid such amount as the estate has actually earned by use of the proceeds of her legacy?

4. Is she entitled to the unearned premiums amounting to $208?

5. Should she be required to pay any sum by way of recompense to the executors, or to their counsel, for expenses incurred in the collection of her claims against the insurance company?

These questions will be considered in regular order:

First. I think that the bequest to Mrs. Platt is beyond doubt a specific legacy.

Second. As such, so long as its character was unchanged,—while it continued, that is, to wear the shape of insurance policies,—it was earning no interest for the legatee.

Upon this subject, the decision in Isenhart v. Brown (*2 Edw. Ch.*, *341*) seems never to have been questioned. The Vice-Chancellor there says: " I have doubts as to the propriety of allowing interest upon the value of the personal property, bequeathed to the widow specifically, and

which she did not happen to receive.  Whatever *produce* accrues upon a specific legacy belongs to a legatee, because it is considered as separated from the general estate and appropriated from the time the testator died.  Thus, where there is a specific legacy of stock, the dividends belong to the legatee.  So, if animals are specifically given, the natural increase or product follows the ownership (2 Roper on Leg., 188; Williams on Ex., 876); but if inanimate and unproductive articles of property are bequeathed and not delivered, it does not follow that the legatee is entitled to interest upon their value out of the estate, by way of recompense.  For the detention, if improperly withheld, the remedy is against the executor personally."

If, therefore, the executors, in the case at bar, had left uncollected even until now the claim against the insurance company, and had, besides, refused to assign or deliver the policies to the legatee, I should feel compelled to disallow her any sum by way of interest.  Now, has her right to interest been in any wise affected, by the action of the executors, in demanding and receiving from the insurance company the amount due on the policies? I cannot see that it has.  The executors were not bound to collect those policies.  They would have discharged their full duty, if they had simply delivered and assigned them to Mrs. Platt.  While this seems evident from the terms of the bequest itself, it is made still more apparent by another clause already quoted from the will.  It is the "personal estate *not specifically devised*," which the executors are directed to convert into cash.  This is, surely, a pretty strong intimation that the specific legacies were not designed to be so treated.  The legatee may or may not have some right of action against the execu-

tors, personally, for their retention of $20,000, or more, procured by turning into money, without her request, the insurance policies given her under the will. With that question this court has no concern. But, as to the matter of interest to be paid out of funds of the estate, Mrs. Platt can reap no advantage from the fact that her legacy has been turned into money.

Third. She may justly claim, however, as directly within the doctrine asserted in Isenhart v. Brown (*supra*), and in numerous other cases cited in 2 Roper on Legacies, page 188, whatever sums have been actually earned by the avails of her legacy, since the same were deposited by the executor with the trust company.

Fourth. I think, too, that, so far as appears by the papers before me, she should take the unearned premiums, as forming a part of what the testator intended should pass by the bequest of the policies. If counsel for the executors, however, wishes to present a statement as to the precise nature of these unearned premiums, and the sources from which they have sprung, the question as to their disposition will not now be finally determined.

Fifth. I do not feel warranted in deducting from this legacy any sum for legal services in reducing it to money. I could not do so in any event, except by way of reimbursement to the executors, and, as yet, only a trivial sum is claimed to have been expended.

But, quite aside from this objection, which could, of course, be readily obviated, I take it that the executors would have done their full duty, as has been suggested already, if they had simply transferred the policies to the legatee, making such assignment as the insurance company would recognize as sufficient. They chose to do

otherwise, and that, too, without her request. *Non constat* but that, had she been afforded the opportunity, she might have been able to procure gratuitously such assistance as seemed requisite for obtaining payment of the policies.